VERA R. MASSEY et al., Respondents, v. ROBERT MATZA, Appellant, et al., Defendant.

First Department, June 21, 1960.

*Solomon Boneparth* of counsel (*Emanuel Morgenbesser, attorney*), for appellant.

*Thomas J. Todarelli* of counsel (*Sylvester J. Garamella, attorney*), for respondents.

McNALLY, J. In an action to recover damages for personal injuries and loss of services of the plaintiff wife, defendant appeals from a judgment in favor of the plaintiffs after a non-jury trial. The contributory negligence of plaintiff wife precludes a recovery herein.

The automobile operated by plaintiff wife on April 9, 1957, at or about 1:15 A.M., on Park Avenue between 114th and 115th Streets in the Borough of Manhattan, City of New York, collided with the rear of the parked truck of the defendant. At the site of the occurrence Park Avenue is divided by an elevated railroad right of way. The easterly portion of the roadway is for northbound traffic and the westerly portion thereof is for southbound traffic. Defendant's truck was parked on the westerly side of the northbound road adjacent to its westerly

curb. Along the easterly sidewalk of the northbound roadway were illuminated electric lights suspended from metal electric light poles.

Prior to the occurrence it had been raining with varying intensity. The recorded hourly precipitation on April 9, 1957 at Central Park, New York City, of the Weather Bureau of the United States Department of Commerce, was a trace of rain between 1:00 and 2:00 A.M., which interval includes the time of the occurrence herein. A trace of rain is an amount too small to measure.

Plaintiff wife testified the accident occurred at 1:15 A.M.; plaintiffs' bill of particulars alleges 1:30 A.M.; the hospital entry shows "At 1:35 A.M. patient was found by police after she hit a parked car"; plaintiffs' brief states the accident occurred about 1:15 A.M.; and defendant's brief states the accident occurred at 1:15 or 1:30 A.M. There is no contention that the accident occurred other than between 1:00 and 2:00 A.M.

Plaintiff wife testified the downpour had increased immediately prior to the impact, whereas plaintiff's sole eyewitness testified that it was merely drizzling at the time. The undisputed testimony is that plaintiff's automobile was proceeding with bright lights and that the windshield wipers were functioning.

Plaintiff wife testified as follows: "As I started ahead the downpour became more so, so that it was very, very difficult to see." If the downpour was of such intensity as to temporarily obscure the vision of the operator, she should have taken greater caution, and, if necessary, pulled over to the easterly or right-hand curb and awaited the abatement of the downpour. "A person, whose power of vision is temporarily obstructed by some supervening condition, should take the greater care and should, if it be possible, await its passing away. If he neglects to proceed cautiously, he must accept the consequences of his undue precipitation." (*Piper* v. *New York Cent. & Hudson Riv. R. R. Co.*, 156 N. Y. 224, 230; *Heaney* v. *Long Is. R. R. Co.*, 112 N. Y. 122, 128; *Hilsenbeck* v. *Guhring*, 131 N. Y. 674, 676; *Lorenz* v. *Tisdale*, 127 App. Div. 433, 434.)

If, as testified by plaintiff's sole eyewitness, it was only drizzling at the time of the occurrence, which testimony is borne out by the Weather Bureau report, and he had no difficulty observing defendant's parked truck, then the plaintiff wife is chargeable with what she would have observed had she looked in the direction she was proceeding. Few principles of law are clearer than the principle which stamps conduct similar to that of the plaintiff wife's contributory negligence.

In *Axelrod* v. *Krupinski* (193 Misc. 1011) defendant's stalled car was located on the southbound roadway of the West Side Express Highway in the City of New York. Plaintiff, operating his automobile, was proceeding southerly in the extreme right-hand lane. The car ahead of the plaintiff's swerved to the left. Thereupon defendant's car came into view of the plaintiff. He swerved to the left and applied his brakes. Nevertheless, plaintiff's car collided with the defendant's. The trial court found the defendant negligent in failing to take measures to warn southbound traffic of his immobilized car, and that plaintiff was free of contributory negligence. The Appellate Division (278 App. Div. 934) found the plaintiff guilty of contributory negligence and dismissed the complaint. The Court of Appeals affirmed (303 N. Y. 738). The evidence of this plaintiff's contributory negligence is far more compelling than in *Axelrod* since here there was no moving vehicle between the defendant's and the plaintiffs' motor vehicles. (See, also, *French* v. *New York Rys. Corp.*, 255 N. Y. 558; *Wood* v. *Pace*, 250 N. Y. 556; *Ford* v. *New York City Interborough Ry. Co.*, 236 N. Y. 346; *Knapp* v. *Barrett*, 216 N. Y. 226, 230; *Dolfini* v. *Erie R. R. Co.*, 178 N. Y. 1, 4; *Tosto* v. *Marra Bros.*, 275 App. Div. 686; *Chiappone* v. *Greenebaum*, 189 App. Div. 579.)

In either aspect of the case, that of the plaintiff wife or that presented by the sole eyewitness, the said plaintiff was guilty of contributory negligence. Moreover, the extensive damage to plaintiffs' automobile, as evidenced by Exhibit D, suggests a rate of speed greatly in excess of that testified to by plaintiff wife. The evidence clearly indicates both parties were negligent; consequently, there can be no recovery.

Upon all the evidence, we find plaintiff wife was guilty of negligence contributing to the happening of the occurrence. In view of this finding, we are required by subdivision 2 of section 584 of the Civil Practice Act to grant the motion for judgment which the court below ought to have granted. (*Calabria* v. *City & Suburban Homes Co.*, 5 A D 2d 983, affd. 5 N Y 2d 918; *Leonard* v. *Frantz Co.*, 268 App. Div. 144; *Bernardine* v. *City of New York*, 268 App. Div. 444; 9 Carmody-Wait, New York Practice, § 177, p. 603.)

The judgment should be reversed, on the law and on the facts, and the complaint dismissed, without costs.

BERGAN, J. (dissenting). In the neighborhood of 115th Street the center of Park Avenue is occupied by a railroad trestle. The street lane on each side of the railroad structure is limited to one-way traffic. On April 9, 1957 plaintiff Vera R. Massey, a physician's assistant and office nurse, returning to her home

in The Bronx late at night from the Lenox Hill Hospital where she had been attending a patient, ran into defendant's truck parked in the northbound lane of Park Avenue between 114th and 115th Streets and was injured.

After a trial by the court without a jury she has had a recovery; and the question on appeal is whether the Trial Judge was so wrong in holding plaintiff herself free from negligence that the judgment in her favor must be reversed.

Proof of defendant's negligence as a cause of the accident is very strong. The truck was parked without any lights on the left-hand side of the northbound lane of traffic in violation of law in a place reserved for moving traffic where a driver using the lane would not expect to meet such an obstacle, and, under the circumstances of this case, where the failure of plaintiff to see it was excusable.

The provisions of section 9 of article 2 of the Traffic Regulations of the City of New York, in effect at the time of accident, not only prohibited parking on the left-hand side of such a divided highway as this, but its purpose to keep the left side of the one-way lane open for moving traffic is further apparent by a prohibition of " stopping " or " standing " as well. In view of this violation of the regulation, the failure of defendant's truck to have lights at night while parked and left in this prohibited area, constituted a separate, distinct statutory violation. (Vehicle and Traffic Law, § 15, subd. 6; for which the general provisions of art. 7, § 102, subd. [e] of the Traffic Regulations, permitting parking without lights when not in violation of regulations, created no exception.)

Plaintiff testified that as she proceeded in the northbound lane there were parked cars along the curb on her right and there was none on the left; she said the parked cars were " on the right side only ". She stopped at the traffic light at 113th Street and was proceeding " cautiously " at " about fifteen miles an hour ". There was a " downpour " of rain which " became more so " as she got beyond 114th Street, and she did not see the truck until she ran into it. Weather Bureau records show that there was precipitation in the hour before 1:00 A.M. and in the hour after; but it was much heavier in the earlier hour. The Battery Station showed .06 inch; Central Park .04 inch before 1 o'clock; and both stations a trace after 1 o'clock. Appellant's argument notes that " There was a decrease in downfall " in the period " between 1 A.M. and 2 A.M.".

It has been assumed by counsel that the accident happened at 1:15 A.M., but the record would permit the trier of the facts to find that it happened earlier within a period of heavier

recorded rainfall. The only direct proof of time of the occurrence in the record is the testimony of plaintiff herself. In fixing time she said it was "About" 1:15 A.M. "as far as I know" but she testified that she left the Lenox Hill Hospital at 76th Street at 12:40 A.M. and went up Park Avenue directly to the place of accident. If this time is correct, it seems reasonable to think she reached 114th Street before 1:00 A.M. At one point in the record she said she left the Lenox Hill Hospital at "12:30 or so".

No police record or police testimony was produced; and the medical history entered in the Hospital for Joint Diseases noting that "At 1:35 A.M. patient was found by police after she hit a parked car" is not attributed to her as a statement or admission of the time of occurrence. It is followed in immediate context by the words "Patient could not remember exact occurrence of events and must be assumed to have been unconscious".

A witness who was nearby when the accident occurred tried to get plaintiff out of the car but the doors were locked. The police came soon after and took her to the hospital. It seems clear that she was unconscious for a while and there was a time lapse of some unknown period between the occurrence and police finding her and getting her out.

Thus the Trial Judge not only could accept plaintiff's testimony that rain interfered with her vision but could find that the accident occurred within a time when he could read the Weather Bureau record as corroborating her testimony. The witness who was near the accident testified it was "drizzling a little bit". Abundant experience supports the concept that drizzle can interfere with driving visibility.

The photographs in evidence of the site where the truck was parked show the left curbing to be very close to the overhang of the railroad trestle and to a continuous wall of a market which occupied the space under the structure; so that a vehicle parked on the left side would have substantially no separation by sidewalk or other space from the adjacent structure. This situation could easily have added to the sight difficulty and obscurity due to the rain.

Plaintiff testified she was driving in the middle of the space left open for moving traffic between vehicles parked on her right and the left side of the roadway. That would be a normal place to drive and the physical facts tend to corroborate plaintiff in this respect. The photograph of her car after the accident suggests a point of contact on its left side rather than a frontal impact; and the pedestrian who observed the truck after the

accident said the truck appeared to have been hit in the rear on its right side.

The proof is that the street in this area was about wide enough for three vehicles and all this cumulatively lends support to what plaintiff said, that she was driving in the center of this open lane. This in turn, in conditions of rain or drizzle, would tend to obscure an unlighted truck on the left range of her vision which occupied a part of the lane plaintiff was using.

There is no proof of excessive speed. It is clear from the photograph and certainly the Trial Judge was justified in finding, that the damage to plaintiff's car was caused by the left side of the hood passing under a portion of the rear of the truck and that the impact which actually stopped its motion, and at the same time injured plaintiff, occurred when the car got so far under the truck that the rear end struck plaintiff's windshield, which was smashed on the left side.

The actual occurrence cannot otherwise be explained consistently with undisputed physical facts. This sort of result could readily be brought about by a car operating at low speed.

Of course a Judge or a jury trying such a case as this could very well decide on the facts that in spite of the negligence of the defendant and the unexpected position in which the truck was left in a traffic lane, plaintiff should in the exercise of reasonable care have observed it in time to have avoided running into it.

But it would not be held as a matter of law that plaintiff was guilty of contributory negligence in this situation; and, indeed, it is increasingly difficult to find recent New York cases involving traffic accidents where the question of contributory negligence is disposed of as a matter of law. The almost invariable current practice in traffic accidents of debatable causation is to treat contributory negligence as a question of fact.

In legal theory a motor vehicle operator undertakes at his peril to see objects fully or partly in his path and to avoid running into them. But every experienced driver knows that there are conditions of limited visibility at night affected by rain or other precipitation where a dark object in a wholly unexpected place ahead creates a sudden emergency even when the vehicle is operated with adequate care and skill; and seeing the danger in time is often a matter of touch and go. This is especially so of tangential vision where the object is somewhat to the right or left, as this truck was, of the area of direct frontal visibility. We are of opinion, therefore, that the plaintiff driver was not negligent.

Our problem on appeal is not to make an initial determination on plaintiff's contributory negligence; it is rather to decide whether the Trial Judge was so far wrong about his decision holding she was not negligent that his judgment must be reversed.

The Appellate Division has the clear and undoubted power to reverse a nonjury decision on the facts; and to make a finding the other way. But it is a power which is rarely to be exercised when the inference of fact is fairly arguable; and the division in this court on the issue of plaintiff's negligence seems to suggest a debatable case. In such circumstances as these the decision of the Trial Judge on the facts ought to be affirmed.

RABIN and VALENTE, JJ., concur with McNALLY, J.; BERGAN, J., dissents in opinion, in which BOTEIN, P. J., concurs.

Judgment reversed, on the law and on the facts, and the complaint dismissed, without costs. Settle order.