■ CYNTHIA L. SEGAL et al., Respondents, v ABRAM SEGAL, Appellant, et al., Defendant.—Interlocutory judgment, Supreme Court, New York County, entered May 24, 1979, after a nonjury trial, adjudicating the issue of liability in favor of plaintiffs and determining that plaintiffs shall recover from defendant Abram Segal upon the ultimate determination of damages one third of such damages, so far as appealed from by said defendant, is affirmed, with costs to plaintiffs. On this record, negligence, proximate cause, and apportionment of liability as against said defendant all presented questions of fact (Pfaffenbach v White Plains Express Corp., 17 NY2d 132, 135; Dole v Dow Chem. Co., 30 NY2d 143, 149). We do not think we should interfere with the determination of these questions of fact by the Trial Judge who sat as trier of the facts. Plaintiffs raise serious questions as to the appropriate apportionment as against defendants who are not parties to the action, one of whom had not settled with defendant, and request that we delete those portions of the judgment apportioning damages in the amount of one third. However, as plaintiffs did not appeal from the interlocutory judgment, we do not now pass on plaintiffs' request. Concur—Kupferman, J. P., Silverman and Ross, JJ.

Birns, J., and Lynch, J. dissent in a memorandum by Lynch, J. as follows: We dissent and would reverse and dismiss the complaint. In this negligence action the issue of liability only was tried by the court without a jury. An automobile, owned by defendant Segal, lent to his daughter, Mrs. Fritz, who was a passenger, and driven by the named, but unserved defendant, Miss Cooper, was in an accident, injuring the plaintiff who is also a daughter of the defendant owner. The car suddenly went out of control while going east on the Massachusetts Turnpike, coming to rest on the inside eastbound lane and moments later it was struck by another car. The trial court correctly concluded that these facts would call upon the defendant for an explanation; unexplained, they would constitute a sufficient showing of negligence upon which the trier of the facts might, but would not be required to, find him negligent (Pfaffenbach v White Plains Express Corp., 17 NY2d 132; Coury v Safe Auto Sales, 32 NY2d 162). Explained, the explanation can be evaluated by the trier of the fact and reasonably accepted to exonerate the defendant (Fagle v Bell, 65 AD2d 887). The defendant provided an explanation through the evidence of the only two eyewitnesses. (The plaintiff remembers nothing of the accident.) The driver Cooper testified that the three women had left Boston two days before for a weekend in New York. Mrs. Fritz had driven part of the way and she had driven the remainder. On the return trip Mrs. Fritz drove to a restaurant on the Massachusetts Turnpike where Miss Cooper took over. This was about 8:30 at night on a March 24 and it was dark. About a minute after leaving the restaurant it started to snow in light flurries that they drove into and out of, but the visibility was clear. Miss Cooper testified that she was driving about 50 miles an hour—the posted speed limit was 65. She stated that, about five minutes away from the restaurant, "we were driving along having a discussion and all of a sudden I just skidded and lost control of the car and I skidded or slid across the lanes and hit the barrier, the right hand barrier, bounced off, and I believe it skidded back", with the car coming to rest partly or all on the inner eastbound lane. The car's engine died and, within a minute, while Miss Cooper was trying to start it, they were struck by another car. A policeman who came to the scene of the accident testified that Miss Cooper, interviewed at the scene, said that "the road was dry and all of a sudden it was glare ice". Mrs. Fritz testified that she had ridden before with Miss Cooper as driver and that Miss Cooper may have done some of the driving on the way to New York. She stated that the night of the accident Miss Cooper took over the driving at 8:30 when they left the restaurant. It was then snowing "very lightly" but as they went along "it got a little heavier". She mentioned that it was snowing to the driver and Miss Cooper agreed. She stated that the car was being driven at 60 miles an hour, that its lights were on, and that visibility was "the normal distance". Mrs. Fritz testified that, in the five minutes that elapsed prior to the happening of the accident, she saw no snow on the road, she saw no ice on the road, she saw only that the highway was wet until she had gotten out of the car after the accident and discovered ice patches on the road. Mrs. Fritz also recalled the accident as a sudden skid, a hitting of the right-hand barrier and a skidding across the road to rest in the inside lane, where, while Miss Cooper was trying to start their car, they were hit by another car. We find the evidence so preponderant in the defendant's favor that the court, as trier of the fact, could not have reached its conclusion that the defendant was negligent on any fair interpretation of it (Marton v McCasland, 16 AD2d 781). We find

that the trial court reached its conclusion by relying on findings having no support in the record. The court held that "all the drivers admittedly exceeded the safe speed limit". Miss Cooper made no such admission and no other driver testified. By alluding to them in two findings the court appeared convinced that "the handling characteristics" of the car and the driver's "relative unfamiliarity" with them played some role in the happening of the accident. If there is any testimony, or inference, on this score, it is to the opposite effect. The court found "poor nighttime visibility". Miss Cooper said visibility was clear and Mrs. Fritz called it normal. The court found that the driver "applied the brakes" in the initial skid while Mrs. Fritz recalled no braking at all and Miss Cooper testified that, if she braked at all, it was after she had hit the right side barrier. The court found that the "downfall of light snow flurries * * * surely made the road wet and slippery". Neither eyewitness testified that the road was slippery up to the point of the initial skid. To the extent that the highway had patches of ice at the point of the initial skid, we agree with the trial court's finding that the skid was caused by a slippery highway. We cannot agree with its finding derived therefrom that the driver would therefore be negligent for having turned the front wheels away from the direction of the skid rather than toward it. Such an action is excused by an emergency not caused by the driver's negligence (*Rossman v La Grega*, 28 NY2d 300, 305), and we find the driver free of negligence. An inference logically flows that is consistent with all of the eyewitness testimony that the defendant's car was being operated safely, at a speed from 50 to 60 miles an hour, with normal nighttime visibility and snow falling lightly, until, without warning or foreseeability, it struck an iced-over area which caused it to skid out of control. (See *Wragge v Lizza Asphalt Constr. Co.*, 17 NY2d 313, 321, 322.) We conclude that, in view of the evidence preponderating in favor of the defendant, the plaintiff has failed to establish that the negligence of defendant Cooper was a proximate cause of the accident. Since the record is complete we would substitute the foregoing in place of the findings of the trial court and reverse and dismiss the complaint (*Weidman v Klot*, 11 AD2d 641; 4 Weinstein-Korn-Miller, NY Civ Prac, par 4213.09).